Filed 8/12/22 P. v. Tapia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C090661 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. STKCRFE20160005847) |
| JOAQUIN SEGOVIANO TAPIA, | |
| Defendant and Appellant. | |

Sixteen-year-old defendant Joaquin Segoviano Tapia, while intoxicated and driving too fast, ran a stop sign, causing a collision that killed a Lyft driver and his passenger. Charged with second degree murder and gross vehicular manslaughter while intoxicated and tried in adult court after a transfer hearing, defendant was acquitted of second degree murder but convicted of two counts of gross vehicular manslaughter while intoxicated, in violation of Penal Code section 191.5, subdivision (a).[1] The trial court sentenced defendant to the maximum term of 13 years.

---

[1] Undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends (1) admission of his prior drunk-driving incident was an abuse of discretion and violated his due process rights, (2) the trial court should have instructed the jury, with respect to gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), that the jury could find gross negligence only if a "reasonable child," rather than a "reasonable person," would have known defendant's actions would create a high risk of death or great bodily injury, (3) cumulative prejudice requires reversal, and (4) the trial court abused its discretion in sentencing him and, if the contention is forfeited, his trial counsel violated his right to effective assistance of counsel. Related to this last contention, in supplemental briefing, defendant asserts that new legislation (Senate Bill No. 567) requires us to vacate the sentence and remand for resentencing.

We conclude (1) admission of defendant's prior drunk-driving incident was not an abuse of discretion and did not violate his due process rights, (2) the trial court properly refused to instruct the jury on a "reasonable child" standard, (3) no prejudice accumulated, and (4) Senate Bill No. 567 requires that we vacate the sentence and remand for resentencing, which renders moot defendant's other sentencing contentions.

We will vacate the sentence and remand for resentencing. In all other respects, we will affirm the judgment.

## BACKGROUND

Driving intoxicated at a speed of about 65 to 75 miles per hour in a 25-mile-per-hour zone, defendant ran a stop sign and hit a car in the intersection. Lyft driver Anthony Pena and passenger David Phillips were in the car defendant hit, and both were killed. Defendant got out of the car and fled but was apprehended by a police officer who saw the collision.

Because defendant was under the age of 18 when he committed the crimes, the matter was certified to the juvenile court. The juvenile court found defendant unfit for proceedings there and transferred him to the adult court.

2

A jury acquitted defendant of second degree murder, but convicted him on two counts of gross vehicular manslaughter while intoxicated. (§ 191.5, subd. (a).) The jury also convicted defendant of hit-and-run resulting in death. (Veh. Code, § 20001, subd. (a).) The trial court sentenced defendant to 13 years in state prison, consisting of the upper term of 10 years for one count of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (c)(1)), a consecutive two years (one-third the middle term) for the other count of gross vehicular manslaughter while intoxicated, and one year (one-third the middle term) for hit-and-run resulting in death (Veh. Code, § 20001, subd. (b)(2)).

## DISCUSSION

### I

The trial court admitted evidence of a prior incident in which defendant drove while intoxicated to show his intent and knowledge in this case as to the second degree murder charge. Defendant contends admission of the prior drunk-driving incident was an abuse of discretion and violated his due process rights.

Before the prosecution's case, the prosecution moved to admit, and defendant moved to exclude, evidence that three and a half months before he killed Pena and Phillips, defendant committed a violation of Vehicle Code section 23152, subdivision (b) (drunk driving) and that an allegation of the incident was found true in a juvenile adjudication. Defendant, driving a Ford Mustang, came out of an alley at a high rate of speed and failed to make a left turn, hitting the curb with the right front wheel. The back end of the car spun around, and the back end also hit the curb. Defendant was arrested, smelling of alcohol. His blood-alcohol level was 0.12 percent.

The trial court initially indicated that it was inclined to exclude evidence of the incident and the resulting juvenile adjudication because "the potential for prejudice is very, very strong," noting that the trial court was required to bring in an additional jury panel because of reactions about this being a drunk-driving case. Over the course of in-

3

court trial preparation, including an Evidence Code section 402 hearing, the trial court and counsel continued to discuss the admissibility of the incident. They also discussed whether the incident would be admissible in connection with cross-examination of defendant's psychiatric expert. The trial court finally ruled that it would admit evidence of the drunk-driving incident, but not the resulting adjudication, in the prosecution's case-in-chief to show defendant's knowledge and intent as it related to the second degree murder charge. Immediately after the admission of the evidence of the prior drunk-driving incident, the trial court instructed the jury that it could use the evidence only "for the limited purpose of determining whether [defendant] learned from that experience that the natural consequences of that conduct are dangerous to human life . . . ." The trial court added: "You may not consider any evidence of prior incidents of drinking and driving as evidence that [defendant] has a bad character[,] criminal record[,] or violation of any laws."

Defendant makes much of the path the trial court took toward eventual admission of the evidence, but the path is immaterial on appeal because we review the ruling, not the reasoning. (*People v. Mickey* (1991) 54 Cal.3d 612, 655-656.) Our review is for abuse of discretion. (*People v. Carter* (2005) 36 Cal.4th 1114, 1149.)

"Evidence that a person committed a crime . . . may be admitted, . . . not to prove a person's predisposition to commit such an act, but rather to prove some other material fact, such as that person's intent or [knowledge]." (*People v. Harris* (2013) 57 Cal.4th 804, 841, citing Evid. Code, § 1101, subd. (b).) The evidence of the prior crime "must be relevant to prove a fact at issue (Evid. Code, § 210), and its admission must not be unduly prejudicial, confusing, or time consuming (Evid. Code, § 352)." (*People v. Leon* (2015) 61 Cal.4th 569, 597-598.)

In *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*), the California Supreme Court held that malice supporting a second degree murder charge may be implied from the knowledge a defendant obtained from prior reckless conduct. In that case, there was

4

evidence the defendant previously caused a fatal automobile accident while he was driving drunk at excessive speed and had nearly collided with another car just before the fatal collision. (*Id*. at pp. 300-301.) The court wrote: "[S]econd degree murder based on implied malice has been committed when a person does ' " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life' " . . . .' [Citations.] Phrased in a different way, malice may be implied when defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with a wanton disregard for human life." (*Id*. at p. 300.)

Since *Watson* was decided in 1981, the courts "have recognized repeatedly that a motor vehicle driver's previous encounters with the consequences of recklessness on the highway--whether provoked by the use of alcohol, of another intoxicant, by rage, or some other motivator--sensitizes him to the dangerousness of such life-threatening conduct." (*People v. Ortiz* (2003) 109 Cal.App.4th 104, 112.) And, from such prior recklessness, "through a series of inferences, a jury could conclude that, at the time of the *charged* misconduct, the defendant possessed a 'wanton disregard for life, and . . . a subjective awareness of the risk created,' from which 'malice may be implied,' " to support a vehicular second degree murder conviction. (*Id*. at p. 113, quoting *Watson, supra*, 30 Cal.3d at p. 298.)

Because defendant was charged with second degree implied-malice murder, the evidence of the prior drunk-driving incident was probative of defendant's knowledge and intent with respect to driving drunk because he had recently driven drunk resulting in his loss of control of the car. It could reasonably be inferred that defendant learned that such out-of-control, drunk driving was dangerous to human life. And, despite the trial court's comment about "the potential for prejudice [being] very, very strong," the evidence was not of a type to inflame the emotions of the jury (see *Vorse v. Sarasy* (1997) 53

5

Cal.App.4th 998, 1008-1009 [concerning what is prejudice under Evid. Code, § 352]), especially when compared to the much more egregious facts of the killing of Pena and Phillips. We therefore conclude the trial court did not abuse its discretion in admitting the evidence of the prior drunk-driving incident.

Defendant argues the evidence of his prior drunk-driving incident was inadmissible because he was not given a *Watson* advisement in connection with that incident. In other words, defendant appears to claim a prior drunk-driving incident is not sufficiently probative of implied malice (including an appreciation of the risk) unless the person had been previously warned of the risk.[2] But *Watson*, itself, debunks that argument because the California Supreme Court found sufficient evidence of implied malice even though the defendant had not received the type of advisement that later sprang from *Watson*'s holding. (*Watson, supra*, 30 Cal.3d at pp. 298-300.) In *Watson*, the court held probable cause existed to charge second degree murder because the defendant was "presumed" to be "aware of the hazards of driving while intoxicated" (*id.* at p. 300), "drove at highly excessive speeds through city streets," avoided a near-accident "only by skidding to a stop," and "belatedly again attempted to brake his car before the [fatal] collision . . . suggesting an actual awareness of the great risk of harm which he had created" (*id.* at p. 301).

Defendant also argues that, because the prior drunk-driving incident did not have terrible consequences like the deaths in the later incident, "the fact that one had been in an accident while driving under the influence previously, and no harm had come to

---

**2** Vehicle Code section 23593 requires that a person convicted of drunk driving be given an advisement, as follows: " 'You are hereby advised that being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving, someone is killed, you can be charged with murder.' " Defendant was not so advised in connection with the juvenile adjudication.

anyone, might *lessen* one's subjective concern that such conduct [] 'is extremely dangerous to human life,' especially when that person is a 16-year-old teenager." While defendant was free to argue this inference to the jury, the trial court, in making its ruling, could reasonably infer that defendant's prior drunk-driving incident had taught him that drunk driving was dangerous to human life.

Defendant asserts admission of the evidence also violated his constitutional rights. But the proper admission of evidence under state law generally does not violate a defendant's constitutional rights. (*People v. Merriman* (2014) 60 Cal.4th 1, 67.)

II

Defendant next contends the trial court should have instructed the jury, with respect to gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), that it could find gross negligence only if a "reasonable child," rather than a "reasonable person," would have known defendant's actions would create a high risk of death or great bodily injury.

A conviction for violating section 191.5, subdivision (a) requires a finding of gross negligence. "Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] 'The state of mind of a person who acts with conscious indifferences to the consequences is simply, "I don't care what happens." ' [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved." (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.) The jury in this case was instructed: "A person acts with gross negligence when; one, he or she acts in a reckless way that creates a high risk of death or greater bodily injury; and two, a reasonable person would have known that acting in that way would create such a risk."

It is well-settled law that the objective test for gross negligence is whether a reasonable person in the defendant's position would have been aware of the risk involved. (*People v. Bennett, supra*, 54 Cal.3d at p. 1036.) The instruction provided to

7

the jury did not include the words "in the defendant's position." But the record does not indicate defendant asked for those words to be added to the instruction; rather, defendant asked the trial court to change the jury instruction from a "reasonable person" standard to a "reasonable child" or a "reasonable teen" standard. Defendant argued: "[The reasonable child standard] should be used to extend the jurors['] understanding of youth's capacity to form the requisite mens rea to commit a crime (the question of a youth's capacity to have formed the specific intent defined by the legal charge, e.g., intentional, knowing, or reckless harm, at the time of the alleged offense)." The trial court denied the request.

On appeal, defendant does not claim the trial court erred in failing to include the words "in the defendant's position" in the jury instruction. Instead, defendant renews his argument that, because he was 16 years old when he caused the collision that killed Pena and Phillips, the trial court should have instructed the jury with a reasonable child standard. We disagree.

According to defendant, courts have recognized that minors are less mature and less able to make appropriate decisions about themselves; the law treats minors differently from adults in many areas; and a reasonable child standard has been adopted in criminal cases in other jurisdictions. (See *In re William G.* (Ariz. Ct. App. 1997) 963 P.2d 287, 293 [applying juvenile standard of conduct for damaging a parked car with a shopping cart]; *In re Welfare of T.* (Minn. 1979) 277 N.W.2d 507, 514 [applying juvenile standard of culpable negligence]; *J.R. v. State* (Alaska Ct. App. 2003) 62 P.3d 114, 119 [applying juvenile standard of care to whether a minor was criminally liable for encouraging another to murder].)

Defendant relies primarily on the United States Supreme Court decision in *J.D.B. v. North Carolina* (2011) 564 U.S. 261 [180 L.Ed.2d 310], but that case is inapposite. In *J.D.B.*, the court determined that, when deciding whether a 13 year old believed he was free to leave during police questioning, it was appropriate to consider the child's age

8

because "a reasonable child subjected to police questioning will sometimes feel pressured to submit when a reasonable adult would feel free to go." (*Id*. at p. 272.) Whereas in the instant case, the issue is gross negligence, not police questioning.

Defendant claims the reasonable child standard is already in place for other forms of liability. For example, in a products liability case involving injury to an 11 year old from diving into a shallow pool, this court concluded: "[T]he danger of diving into a shallow aboveground pool is not open and obvious to an 11 year old as a matter of law." (*Bunch v. Hoffinger Industries, Inc.* (2004) 123 Cal.App.4th 1278, 1300.) But *Bunch* merely clarified civil law with respect to the perceptions of a victim; it did not change the standard applicable to a wrongdoer. Here, defendant is urging something different.

Defendant argues the change in law he is seeking should be made in California because it has been done in other contexts and in other jurisdictions. He does not claim that a constitutional principle mandates the change or that binding precedent requires the amendment to current law. Under the circumstances, his request is more appropriately directed to the Legislature. (*People v. Carter* (1997) 58 Cal.App.4th 128, 134.)

Defendant contends the trial court violated his due process rights by not instructing consistent with the instructional change he seeks. We conclude it was not error to decline the specific instruction sought by defendant.

### III

In addition, defendant claims the asserted evidentiary and instructional errors resulted in accumulated prejudice requiring reversal. Having found no error, we also conclude there was no accumulated prejudice.

### IV

Defendant further contends the trial court abused its discretion in sentencing him and, if the contention is forfeited, his trial counsel violated his right to effective assistance of counsel. He asserts the trial court failed to state its reasons on the record for sentencing decisions, abused its discretion in imposing the terms because the mitigating

9

factors outweighed the aggravating factors, relied on improper factors, and improperly ordered the subordinate terms to be served consecutively. In supplemental briefing, defendant also contends we must vacate the sentence and remand for resentencing under the newly-enacted changes to section 1170 concerning determinate sentencing (Senate Bill No. 567). We turn first to the contention raised in supplemental briefing.

Defendant argues that, because his judgment is not final, he is entitled to retroactive application of the amendments to section 1170, and those amendments require us to vacate his sentence and remand this matter so the trial court can exercise its sentencing discretion in light of the new legislation.

While this appeal was pending, the Governor signed Senate Bill No. 567 (2021-2022 Reg. Sess.), which changed the requirements for using aggravating circumstances and altered sentencing discretion under section 1170, effective January 1, 2022. (Stats. 2021, ch. 731.)[3] Among other things, Senate Bill No. 567 amended section 1170 to prohibit upper term sentencing unless factors in aggravation are stipulated to by the defendant, proven to a factfinder beyond a reasonable doubt, or established by a certified record of conviction. (§ 1170, subd. (b)(2), (3).) Senate Bill No. 567 also creates a presumption in favor of the low prison term if defendant's youth or psychological, physical, or childhood trauma contributed to the commission of the offense. (§§ 1170, subd. (b)(6)(A) & (B); 1016.7, subd. (b).)

---

[3] Three bills amending section 1170 became effective on the same date. (Stats. 2021, ch. 695, § 5 (Assem. Bill No. 124), eff. Jan. 1, 2022; Stats. 2021, ch. 719, § 2 (Assem. Bill No. 1540), eff. Jan. 1, 2022; Stats. 2021, ch. 731, § 1.3 (Sen. Bill No. 567), eff. Jan. 1, 2022.) Senate Bill No. 567 -- which takes precedence because it was enacted last (Gov. Code, § 9605) -- states that if all three bills amending section 1170 are enacted and become effective on or before January 1, 2022, and Senate Bill No. 567 is enacted last, then section 1.3 of that bill, which incorporates the amendments proposed by Senate Bill No. 567, Assembly Bill No. 124, and Assembly Bill No. 1540, shall become operative. (Stats. 2021, ch. 731, § 3.)

The People agree, and we do too, that the change in the law is ameliorative and applies retroactively to defendant's case. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039.)

Defendant argues we must vacate the sentence and remand for resentencing because, in imposing the upper term for gross vehicular manslaughter while intoxicated, the trial court relied on factors that were not stipulated to or proven beyond a reasonable doubt to a factfinder. (§ 1170, subd. (b)(2).) He also argues his prior psychological trauma and youth contributed to the commission of the offense. (§ 1170, subd. (b)(6)(A) & (B).)

The People do not deny that due to the change in the law, the trial court's sentencing has become erroneous under amended section 1170, subdivision (b), but they claim the error was harmless beyond a reasonable doubt. In doing so, they do not dispute that the facts underlying the circumstances in aggravation recited by the trial court were not stipulated to by defendant and were not found true beyond a reasonable doubt by the jury. (§ 1170, subd. (b)(2).) They also do not dispute that defendant's youth and his psychological trauma now require a presumption for the low term. (§ 1170, subd. (b)(6).)

The circumstances of this case lead us to conclude that remand is appropriate. Here, the trial court mentioned defendant's youth, but it did not start with a presumption of the low term, which is now required. The youth presumption applies to anyone under 26 years of age, and defendant was 16 when he committed the offenses. (§§ 1170, subd. (b)(6)(A) & (B); 1016.7, subd. (b).) Also, the trial court did not mention or consider the possibility that prior psychological trauma contributed to the commission of the offense. (§ 1170, subd. (b)(6)(A).) There was evidence from an expert that defendant experienced posttraumatic stress disorder and anxiety as a result of tragic events in his family leading up to the time of these offenses. Those circumstances, combined with the absence of aggravating factors stipulated to by defendant, proven to a factfinder beyond a reasonable doubt, or established by a certified record of conviction, convince us that the

11

trial court should have an opportunity to reconsider the upper term sentence based on the retroactive change in the law.

We will vacate the sentence and remand for resentencing. Given this result, we need not consider defendant's other sentencing contentions.

DISPOSITION

The sentence is vacated and the matter remanded for resentencing consistent with the amended version of section 1170, subdivision (b). In all other respects, the judgment is affirmed.

/S/
MAURO, Acting P. J.

We concur:

/S/
DUARTE, J.

/S/
RENNER, J.